**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | | |
|---|---|---|
| **RONALD CARTER, SR., AND** | **)** | |
| **MARY ANN CARTER,** | **)** | |
| | **)** | Case No. |
| Plaintiffs, | **)** | |
| | **)** | |
| vs. | **)** | **TRIAL BY JURY DEMANDED** |
| | **)** | |
| **SELENE FINANCE LP,** | **)** | |
| | **)** | |
| Defendant. | **)** | |

## COMPLAINT

Plaintiffs, Ronald Carter, Sr. and Mary Ann Carter (collectively, "Plaintiffs"), through counsel, for their complaint against Selene Finance LP, state:

### WHY PLAINTIFFS BRING THIS CASE

1.     Like many individuals over the past decade, Plaintiffs encountered economic hardship. When Plaintiffs encountered problems paying their mortgage, they contacted their loan servicer, Selene Finance LP "(Selene") and its predecessor servicers and sought to "short sell" their home as loss mitigation.

2.     Yet, despite Plaintiffs' sincere efforts to conclude a short sale promptly, the servicers drug out the process through unreasonable delay and for invalid reasons, causing the sale to be repeatedly rescheduled, delayed and for the Plaintiffs to be kept in a state of default for a period longer than necessary.

## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiffs owned the real property and improvements located at and commonly known as 2041 Stumpville Road, Jefferson, Ohio 44047 (the "Home").

4.      At all relevant times, Plaintiffs lived in the Home as their primary, principal residence.

5.      On January 11, 2008, in order to purchase the Home, Plaintiffs borrowed money and executed a note in the amount of $163,594 payable to Taylor, Bean and Whitaker Mortgage Corporation. (the "Note"). To secure payment of the Note, Plaintiffs granted a contemporaneous mortgage lien on their Home (the "Mortgage"). A copy of the Note and a copy of the Mortgage are attached as ***Plaintiffs' Exhibit 1***. The Note and Mortgage are collectively referred to hereinafter as the "Loan."

6.      Through a series of assignments, Selene became the owner of the Loan as of November 14, 2014 and also began to service the loan at that time.  Selene is the current servicer of the Loan.

7.      Jurisdiction over the claims against Selene is conferred by 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), and the the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

8.      This action is brought to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35 of Regulation X.

9.      This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs assert claims pursuant to the Ohio Residential Mortgage Loan Act, R.C. 1322, *et seq.,* and the Ohio Consumer Sales Practices Act. R.C. 1345.01 *et seq.*

10.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and as the Home is located within this District.

## SUMMARY OF CLAIMS

11.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     Specifically, on January 17, 2013, the CFPB issued RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013), which became effective on January 10, 2014.

13.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

14.     Selene is subject to these Regulations X and Z and does not qualify for an exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor any exemption for a "qualified lender", as defined in 12 C.F.R. § 617.700.

15.     Plaintiffs assert claims for relief against Selene for violations of the specific rules set forth in Regulations X, as set forth *infra*.

16.     Plaintiffs assert a state law claim violations of the Ohio Residential Mortgage Loan Act and the Ohio Consumer Sales Practices Act.

**THE LOAN, REQUESTS FOR INFORMATION, AND LOSS MITIGATION**

17.     In 2015, Plaintiffs encountered financial difficulties and fell behind in their payments on the Loan.

18.     On March 31, 2016, Selene filed a complaint seeking to collect the Loan and foreclose its lien on the Home by filing its complaint in the Court of Common Pleas, Ashtabula County, Ohio, captioned *Selene Finance LP v. Mary Ann Carter and Ronald A. Carter, Sr, et al.*, which was assigned Case No. 2016-cv223 (referenced hereinafter as the "Foreclosure Case").

19.     Plaintiffs retained counsel who appeared and represented the Plaintiffs' interests in the Foreclosure Case and concurrently requested certain information regarding the Loan from Selene, as detailed hereinbelow.

20.     By letter dated June 9, 2016, Plaintiffs, through counsel, sent Selene correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1026.36 and 15 U.S.C. § 1641(f)(2)" requesting that Selene provide the identity and address for the current owner, master servicer and current servicer of the Loan.  A copy of this correspondence is attached as ***Plaintiffs' Exhibit 2*** and is referenced hereinafter as "Plaintiffs' TILA Request."

21.     By letter dated June 9, 2016, Plaintiffs, through counsel, sent Selene correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1026.36" requesting that Selene provide relevant information concerning the servicing of the Loan.  A copy of this correspondence is attached as ***Plaintiffs' Exhibit 3*** and is referenced hereinafter as "Plaintiffs' RFI #1."

22.      By letter dated June 9, 2016, Plaintiffs, through counsel, sent Selene correspondence captioned "Request for Payoff Statement Pursuant to 12 C.F.R. § 1026.36(c)(3)" requesting that Selene provide a payoff statement for the Loan. A copy of this correspondence is attached as **Plaintiffs' Exhibit 4** and is referenced hereinafter as "Plaintiffs' Payoff Request."

23.      Selene received Plaintiffs' TILA Request, Plaintiffs' RFI #1 and Plaintiffs' Payoff Request at the address which Selene had designated for such correspondence. Evidence of the delivery of each is attached as **Plaintiffs' Exhibit 5.** Selene acknowledged receipt of Plaintiffs' correspondence by letter dated June 15, 2016, a copy of which is attached as **Plaintiffs' Exhibit 6.**

24.      Selene failed to respond to Plaintiffs' Payoff Request within seven business days of its receipt.

25.      On July 15, 2016, Plaintiffs, through counsel, sent correspondence to Selene captioned "Notice of Error under 12 C.F.R. § 1024.35(b)(6) for failing to respond to a borrower's Request for Information issued pursuant 12 C.F.R. § 1024.36 and 12 C.F.R. § 1026.36(c)(3) by providing a payoff statement for the loan in a timely manner. A copy of this correspondence is attached as **Plaintiffs' Exhibit 7** and is referenced hereinafter as "NOE #1." In this letter, Plaintiffs' counsel raised as error the fact that Selene had not provided a payoff quote in the time required by law as requested by Plaintiffs' Payoff Request.

26.      On July 19, 2016, Plaintiffs, through counsel, sent correspondence to Selene captioned "Notice of Error under 12 C.F.R. § 1024.35(b)(6) for failure to properly respond to a request for information as required by 12 C.F.R. §1024.36(d)." A copy of this correspondence is attached as **Plaintiffs' Exhibit 8** and is referenced hereinafter as "NOE #2." In this letter,

Plaintiffs' counsel raised as error the fact that Selene had not provided information requested in the time required by law as requested by Plaintiffs' TILA Request.

27.     Selene received NOE #1 and NOE #2 at the address it had designated for such correspondence. Selene did not provide a timely response to any of these notices.

28.     By facsimile letter dated transmitted on July 27, 2016, Selene provided Plaintiffs with a payoff quote for the Loan.  This correspondence was received after the period required by law. No response to NOE #1 was provided nor were Plaintiffs given any explanation as to why the payoff quote was provided  later than required by law.

29.     At no time has Selene provided a response to NOE #2 and has never provided the information requested in Plaintiffs' TILA Request.

30.     By letter dated September 2, 2016, Selene claims that it responded to Plaintiffs' RFI by letter dated July 26, 2017 and provided documents to Plaintiff concerning the servicing of the Loan. Plaintiff did not receive this correspondence and disputes that it was sent to Plaintiffs at all.  The first time that Plaintiff saw the letter dated July 26, 2016 was when it was received as an attachment to the September 2, 2016 letter from Selene.   A copy of this correspondence is attached as ***Plaintiffs' Exhibit 9*** and is referenced hereinafter as "Selene's Response to NOEs." In this letter, Selene claims that its July 26, 2016 correspondence (which Plaintiffs did not receive) was a timely response to Plaintiffs' RFI #1 because it was sent to Plaintiffs within thirty (30) days of the Plaintiffs' RFI #1 which Selene acknowledges it received on June 13, 2016. This is demonstrably false - the purported response was made (if at all) at least forty-three (43) days after receipt by Selene of Plaintiffs' RFI #1

31.     On December 19, 2016, Plaintiffs submitted a a short sale application to Selene by and through its counsel of record in the Foreclosure Case.  A true and correct copy of the cover page for Plaintiffs' loss mitigation application is attached as ***Plaintiffs' Exhibit 10*** and is hereinafter referenced as Plaintiffs' Submission #1.

32.     On December 22, 2016 Selene sent the Plaintiffs correspondence acknowledging receipt of a facially complete loss mitigation application - Submission #1. A true and correct copy this correspondence is attached as ***Plaintiffs' Exhibit 11***.

33.     On January 17, 2017, Selene sent correspondence to the Plaintiffs approving the Plaintiffs for a FHA HAMP trial plan and stating that Plaintiffs are "Eligible" for Short Sale ("HAMP Offer #1).     A true and correct copy of Selene's HAMP Offer #1 is attached as ***Plaintiffs' Exhibit 12***.

34.     Pursuant to the offer contained in Exhibit 12, Plaintiffs were given until January 31, 2017 to accept the proposed trial plan and were to make their first payment on March 1, 2017.

35.     By letter dated January 31, 2017, Plaintiffs' counsel advised Selene that the Plaintiffs rejected the trial plan and instead would accept Selene's offer to be considered for a short sale. A true and correct copy of this correspondence is attached as ***Plaintiffs' Exhibit 13.***

36.     On March 27, 2017, Selene's counsel sent email correspondence to the Plaintiffs which stated that the Plaintiffs would not be able to opt out of the HAMP loss mitigation option as there is a credit score of 630, and the credit score will have to be 580 and below. The Trial Plan would have to break first…" A true and accurate copy of the March 27, 2017 email is attached as ***Plaintiffs' Exhibit 14.***

37.     The March 27, 2017 correspondence states that the Plaintiffs had to wait for the trial plan offer to fail prior to being considered for a short sale due to their credit score being 630. Selene asserted that the credit score being 620 or less is a requirement of the Streamlined Pre-Foreclosure Sale ("PFS") pursuant to Handbook 4000.1 of the FHA Single Family Housing Policy Handbook. If a borrower cannot be considered for a Streamline PFS, the borrower should then be considered for a Standard PFS. A copy of the relevant portions of Handbook 4000.1 is attached as ***Plaintiffs' Exhibit 15.***

38.     Selene should have considered the Plaintiffs for a Standard PFS pursuant to FHA Guidelines. Instead, they required that the Plaintiffs to wait for the trial plan offer to be denied due to failure to make the required payments.

39.     On April 5, 2017 Selene sent correspondence to the Plaintiffs notifying them that they were unable to fulfill the loan modification due to the Plaintiffs having missed payment ("Trial Plan Denial"). A copy of the Trial Plan Denial is attached as ***Plaintiffs' Exhibit 16***. The Trial Plan Denial also contained Form HUD-90035 which is required pursuant to FHA guidelines to be mailed "when a Borrower has expressed an interest in participating in the PFS program or has been identified by the Mortgagee as a qualified candidate for the PFS Program."

40.     On May 23, 2017, the Borrowers, by and through counsel, submitted a Purchase Offer to Selene in order to be considered for a short sale ("Submission #2). A true and accurate copy of the cover page for Submission #2 is attached as ***Plaintiffs' Exhibit 17***.

41.     On or about June 26, 2017, Selene sent correspondence to the Borrowers requesting updated financial documents (the "Request"). A true and accurate copy of the Request is attached as ***Plaintiffs' Exhibit 18***.

42.     On July 14, 2017, the Borrowers, by and through counsel, submitted any all and all documents requested by Selene by and through the Request ("Submission #3"). A true and accurate copy of the cover page for Submission #2 is attached as ***Plaintiffs' Exhibit 19***.

43.     On or about August 7, 2017, Selene sent correspondence to the Borrowers acknowledging that their pending application was facially complete ("Acknowledgement"). A true and accurate copy of Selene's Acknowledgement is attached as ***Plaintiffs' Exhibit 20***.

44.     On or about September 1, 2017, Selene again sent the Plaintiffs correspondence stating that their application had been approved for HAMP Modification and Partial Claim Combination ("HAMP Offer #2"). A true and accurate copy HAMP Offer #2 is attached as ***Plaintiffs' Exhibit 21***.  HAMP Offer #2 also states that the Plaintiffs are eligible for a Short Sale and contains Form HUD-90035.

45.     The March 23, 2017 email correspondence from Selene's counsel stated that the Plaintiffs would be reviewed for a short sale once HAMP Offer #1 expired in April of 2017. Selene was required to review the Plaintiffs for a Standard PFS after the Plaintiffs rejected HAMP Offer #1 on January 31, 2017. Instead, Selene chose to require HAMP Offer #1 to expire before reviewing the Plaintiffs for non-retention options. The Plaintiffs complied with Selene's inaccurate requirement and made Submission #2 and subsequently Submission # 3 in order to be considered for a short sale. Now on September 1, 2017, Selene sent the Plaintiffs HAMP Offer #2 and once again took the position that this offer had to expire before Plaintiffs would be reviewed for non-retention options. There is nothing in Handbook 4000.1 of the FHA Single Family Housing Policy Handbook that requires borrowers wait until an unwanted loan modification offer expires in order to be considered for a Standard PFS.

46.     On September 15, 2017, Plaintiffs, through counsel, sent correspondence to Selene captioned Notice of errors under 12 C.F.R. §1024.35(b)(11) for failure to properly evaluate the borrower's loss mitigation application in violation of §1024.38(b)(2); Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(b)(2)(i); Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(c); Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) for improperly denying a borrower's loss mitigation application; Requests for Information pursuant to 12 C.F.R. § 1024.36 ("NOE #4"). A true and correct copy of NOE #4 excluding the enclosures  is attached as ***Plaintiffs' Exhibit 22***.

47.     NOE #4 raised with Selene the specific errors discussed herein above and requested that Selene correct said errors.

48.     Selene acknowledged receipt of NOE #4 by letter dated September 25, 2017, a true and correct copy of NOE #4 is attached as ***Plaintiffs' Exhibit 23***.

49.     By letter dated November 27, 2017, Selene responded to NOE #4 ("Response to NOE #4).  A true and  and correct copy of the Response to NOE #4 is attached as ***Plaintiffs' Exhibit 24***. In this response, Selene acknowledges errors  - specifically that the short sale option was not properly processed.

50.     On or about November 2, 2017, Selene sent correspondence to Plaintiffs stating: "[w]e regret to inform you that we are unable to approve your request at this time for the following reason(s): Borrower missed scheduled payment."  A true and correct copy Selene's November 2, 2017 letter to Plaintiffs  is attached as ***Plaintiffs' Exhibit 25***.

51.     On or about November 28, 2017, Selene correspondence to Plaintiffs inviting Plaintiffs to participate in Selene's Short Sale Program. A true and correct copy Selene's November 28, 2017 letter to Plaintiffs  is attached as ***Plaintiffs' Exhibit 26***.

52.     Also on or about November 28, 2017, Selene correspondence to Plaintiffs stating that Plaintiffs application was facially complete. A true and correct copy Selene's November 28, 2017 letter to Plaintiffs  is attached as ***Plaintiffs' Exhibit 27***.

53.     A short sale of the Home closed on April 5, 2018, nearly 17 months after Plaintiffs had first sought approval from Selene for non-retention loss mitigation in December, 2016.

54.     Under HUD guidelines, at the time of the closing of the short sale, the Carters were entitled to a "Relocation Incentive" payment of $3,000, in consideration for their efforts and cooperation in the short sale, and its beneficial impact upon Selene, and ultimately HUD as the guarantor on the loan.  Selene failed to offer or pay that incentive to the Carters. See ***Plaintiffs' Exhibit 15***.

## IMPACT ON PLAINTIFFS

55.     Plaintiffs reached out for help when they encountered financial difficulty. In good faith they accepted Selene's ostensible offer to allow them to short sell the Home first made in January, 2017.

56.     Through no fault of Plaintiffs, Selene took over twelve (12) months to finally conclude a sale of the Home.

57.     During these many months, Plaintiffs remained in a state of default, remained parties to a foreclosure case for which they had to pay attorneys to represent and protect their interests, at substantial cost.

58.     Additionally, Plaintiffs have been precluded from their erstwhile efforts to put their financial difficulties behind them start fresh and begin to rehabilitate their credit standing.

59.      The conduct of Selene has had severe a severe impact on Plaintiffs, emotionally, physically, and financially.

60.     Selene's servicing errors and indifference has had a major impact on Plaintiffs. Plaintiffs are consumed by worry and frustration over the status of the Loan.

61.     Plaintiffs have endured severe emotional distress proximately caused by the conduct of Selene. This stress is driven by the daily ongoing burden of remaining a defendant in foreclosure. This stress and fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant and persistent emotional distress and which promised dire medical consequences.

62.     The actions of Selene, have caused Plaintiffs to incur actual damages including, but not limited to, lost time, costs and expenses in attempting to have Selene correct its errors, and when all else failed attorneys' fees and expenses to raise errors and try to resolve the same prior to filing the instant action.

63.     Throughout this entire ordeal, Plaintiffs have merely wanted to sell the Home pursuant to Selene's initial offer of a short sale option.

64.     Selene has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of the Real Estate Settlement Procedure Act, 12 U.S.C. §§

2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. part 1024 ("RESPA"). At the time of the filing of this Complaint, Selene has had at least Five Hundred Twenty (520) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products and at least Three Hundred Forty (340) such complaints identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account". Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which is located at: https://www.consumerfinance.gov/data-research /consumer-complaints/.

### COUNT ONE: VIOLATION OF TILA

**[Violations of 12 C.F.R. §1026.36(c)(3) and 15 U.S.C. §1639g for failure to provide an accurate payoff statement for the Loan in a timely manner]**

65.     Plaintiffs restate and incorporate all of the statements and allegations contained in paragraphs 1 through 64 in their entirety, as if fully rewritten herein.

66.     12 C.F.R. §1026.36(c)(3) states that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer.

67.     15 U.S.C. §1639g provides that "[a]creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower."

68.     Selene was the owner of the Loan at all times relevant to the instant action since June 2017.

69.     Selene contracted with itself to service the Loan.

70.     Plaintiffs sent the Payoff Request to Selene on or about June 9, 2016. See *Plaintiffs' Exhibit 4.*

71.     Pursuant to both 12 C.F.R. §1026.36(c)(3) and 15 U.S.C. §1639g, Selene was required to supply an accurate payoff statement for the Loan in response to the Payoff Request within seven (7) business days, or on or before June 16, 2016.

72.     Selene did not send a payoff statement to Jones on or before June 16, 2016.

73.     Plaintiffs did not receive a payoff statement from Selene until September 2, 2017.

74.     Selene's actions, in failing to send any response to the RFI within seven (7) business days of receipt of the same was in violation of both 12 C.F.R. §1026.36(c)(3) and 15 U.S.C. §1639g.

75.     As a result, Selene is liable to Plaintiffs for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

## COUNT TWO: VIOLATION OF RESPA

**[Multiple Violations of 12 C.F.R. §1024.36 for failure to properly and timely respond to Plaintiffs' RFI #1 and Plaintiffs' TILA Request]**

76.     Plaintiffs restate and incorporate all of the statements and allegations contained in paragraphs 1 through 64 in their entirety, as if fully rewritten herein.

77.     12 C.F.R. § 1024.36(a) provides that "[a] servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's

mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

78.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

79.     12 C.F.R. § 1024.36(d)(1) provides that:

> Except as provided in paragraphs (e) and (f) of this section, a servicer must respond to an information request by either: (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

80.     12 C.F.R. § 1024.36(d)(2)(i) provides that "A servicer must comply with the requirements of paragraph (d)(1) of this section: (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request."

81.     Plaintiffs' RFI #1 and Plaintiffs' TILA Request  (collectively the "RFIs") are each a request for information pursuant to 12 C.F.R. § 1024.36(a). See *Exhibits 2 and 3*.

82.     Plaintiffs sent each of the RFIs to Selene at the address Selene designated for the receipt of such requests pursuant to 12 C.F.R. § 1024.36(b). See *Exhibits 2 and 3*.

83.     Selene received each of the RFIs at the address Selene designated for the receipt of such requests pursuant to 12 C.F.R. § 1024.36(b). See *Exhibit 5*.

84.     Selene failed to send proper written notice to Plaintiffs in response to Plaintiffs' TILA Request within ten (10) business days of their receipt of the same.

85.     Selene failed to send proper written notice to Plaintiffs in response to Plaintiffs' RFI #1 within thirty (30) business days of their receipt of the same.

86.     Through Selene's Response to NOE #3, Selene claims that it responded to Plaintiffs' RFI by letter dated July 26, 2017 and provided documents to Plaintiff concerning the servicing of the Loan. Plaintiff did not receive this correspondence and disputes that it was sent to Plaintiffs at all..  The first time that Plaintiff saw the letter dated July 26, 2016 was when it was received as an attachment to the September 2, 2016 letter from Selene.

87.     Selene's actions in failing to fully and properly respond to each of the RFIs constitute two (2) clear violations of 12 C.F.R. § 1024.36, one (1) such violation for each of the RFIs to which Selene failed to properly respond.

88.     Selene's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

89.     As a result of Selene's failure to properly respond to each of the RFIs, Plaintiffs' suffered actual damages as detailed, *supra*, including, but not limited to incurring fees and costs in the preparation and mailing of subsequent requests for information and notices of error such as

NOE #2 and NOE #3 which would not have been necessary but for the failure of Selene to respond to prior requests for information.

90.     As a result of Selene's actions, Wells Fargo is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: VIOLATION OF RESPA

**[Multiple Violations of 12 C.F.R. §1024.35(e) for failure to reasonably investigate and properly respond to a notice of error in violation of 12 C.F.R. §1024.35]**

91.     Plaintiffs restate and incorporate all of the statements and allegations contained in paragraphs 1 through 64 in their entirety, as if fully rewritten herein.

92.     12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

93.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

94.     12 C.F.R. § 1024.35(d) provides that a servicer must acknowledge in writing receiving a notice of error from a borrower within five (5) days of receipt.

95.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the

servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

## COUNT FOUR-
## VIOLATIONS OF THE OHIO RESIDENTIAL MORTGAGE LENDING ACT, ("ORMLA") R.C. 1322.01, *et seq.*

96.     Plaintiffs restate and incorporate all of the statements and allegations contained in paragraphs 1 through 64 in their entirety, as if fully rewritten herein.

97.     Selene is a mortgage broker and non-bank mortgage lender, registered under the Nationwide Mortgage Licensing system as NMLS ID 6312[1] and in Ohio under the Residential Mortgage Loan Act, R.C. 1322.07, as license number RM.501430.000.

98.     The RMLA imposes fiduciary duties upon licensees which require them to "Act with reasonable skill, care, and diligence", R.C. 1322.45(A)(3), *renumbered by Ohio House Bill 199 from prior R.C. 1322.081.*

99.     As alleged in the prior paragraphs, Selene's failure to provide timely, accurate, and complete responses to the Plaintiffs' requests for information, notices of error, and inquiries related to the short sale, and Selene's failure to comply with CFPB regulations, including 12 C.F.R. § 1024.35, and 12 C.F.R. § 1024.36, and Selene's failure to comply with HUD regulations at 24 C.F.R. § 203.501 and HUD Handbook 4000.1 are failures to act with reasonable skill, care, and diligence.  Each of these acts described herein are a violation of Selene's fiduciary duties outlined in R.C. 1322.45(A)(3).

---

[1] http://www.nmlsconsumeraccess.org/Home.aspx/MainSearch, last visited August 30, 2018.

100.     Selene's conduct as alleged in the preceding paragraphs are a practice or course of business which is in breach of the covenant of good faith and fair dealing imposed upon Selene by R.C. 1349.41(B) and (D).

101.     Based on the actions of Selene described herein, the Plaintiffs are entitled to an award of actual damages in an amount to be determined at trial, punitive damages, and Plaintiffs' reasonable attorneys fees and costs.

### COUNT FIVE:
### VIOLATIONS OF THE CONSUMER SALES
### PRACTICES ACT, ("OCSPA"), R.C. 1345.01, *et seq.*

102.     The Plaintiffs restate all allegations contained in Paragraphs 1 through 64 and Paragraphs 82 through 87 as if fully restated herein.

103.     The Plaintiffs are consumers as that term is defined by the OCSPA in that they entered into a consumer transaction with the predecessor in interest to Selene.

104.     Selene is a "non-bank lender" as that term is defined at R.C. 1345.01(K), and is both a "seller" and a "supplier" as that term is defined at R.C. 1345.01(C).

105.     Selene's conduct as alleged in Paragraphs 82 through 87 constitute unfair or deceptive acts in violation of R.C. 1345.02(A)

106.     Selene's conduct as alleged in the preceding paragraphs is also a violation of R.C. 1345.02(F), in that the responses to the various requests for information and notices of error contained material misrepresentations that Selene's actions were in compliance with HUD regulations and guidelines.

107. Based on the actions of Selene described herein, the Plaintiffs are entitled to an award of actual damages in an amount to be determined at trial, non-economic damages of $5,000.00, treble damages, and Plaintiffs' reasonable attorneys fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs Ronald Carter, Sr. and Mary Ann Carter respectfully request that this Court enter an order granting Judgment against Selene for the following:

A. For actual damages for each Plaintiff against Selene, as to all allegations contained in Counts One through Five;

B. For non-economic damages for each Plaintiff of Five Thousand Dollars ($5,000.00) against Selene as to the allegations contained in Count Five;

C. For statutory damages of Four Thousand Dollars ($4,000.00) per each Plaintiff against Selene for violation of 12 C.F.R. § 1026.36(c)(3) and 15 U.S.C. §1639g as alleged in Count One;

D. For statutory damages of Two Thousand Dollars ($2,000.00) against Selene for each and every violation of 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36, respectively, as alleged in in Counts Two and Three;

E. For punitive damages per Plaintiff against Selene as to all allegations contained in Count Four;

F. For treble damages per Plaintiff against Selene as to all allegations contained in Count Five;

G. For all of Plaintiffs' costs and reasonable attorney fees against Selene, as to all allegations contained in Count One through Five; and

H.      For all other relief this Court may deem just and proper.

*Respectfully submitted,*

/s/ Marc E. Dann
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
**DannLaw**
P.O. Box 6031040
Cleveland, OH 44103
Ph. (216) 373-0539
F. (216) 373-0536
notices@dannlaw.com
*Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues with the maximum number of jurors as permitted by law.

/s/ Marc E. Dann
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
**DannLaw**
*Attorneys for Plaintiffs*